**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KENNETH BEHLING,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No. 12 C 7028** |
| **v.** ) | |
| ) | **Magistrate Judge Daniel G. Martin** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Kenneth Behling on behalf of his deceased brother Ronald Behling (Behling) seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB).[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Because the administrative law judge's decision is supported by substantial evidence, the denial of benefits is affirmed.

**I.     Background**

Behling applied for DIB on December 15, 2009, alleging he became totally disabled on September 24, 2006 because of hearing loss, complications from diabetes, Charcot right foot, loss of balance, and a staph infection in one toe on each foot.  (R. 63, 68, 130-36, 165, 191).  Behling's insured status for DIB purposes expired on December 31, 2009, which means Behling had to show that he was disabled on or before that date to be eligible for DIB.  (R. 161).

Behling was born on September 24, 1951 and suffered from numerous conditions.  (R. 30, 130).  Behling had a history of diabetes, at one time insulin-dependent but at the time of the administrative hearing on April 5, 2011 controlled with oral medication.  (R. 35).  His diabetes caused complications, including diabetic retinopathy and diabetic neuropathy. Behling was morbidly

---

[1] Ronald Behling died on February 25, 2012, while his appeal was pending before the Appeals Council.  (R. 216).  Kenneth Behling, Ronald Behling's brother, was substituted as the claimant after Ronald Behling died.  (R. 8).

obese.  Behling also had right foot problems, including deformity, cellulitis, and abscess.  Behling was deaf in his right ear and partially deaf in his left ear.  Behling took medications to control his diabetes, high blood pressure, and high cholesterol and also citalopram for depression.  (R. 169, 192, 212).

Behling completed 14 years of education.  (R. 30).  Behling was able to drive and had past work experience as a systems analyst and computer programmer for a computer supply company.  (R. 31, 181).  He last worked on July 9, 2004, when the company he worked for consolidated with another company and he was laid off. (R. 31-32, 166).  Behling had worked for that same company for 20 years.  (R. 31).  Behling's application was denied at the initial and reconsideration levels for insufficient evidence.  (R. 54-55, 59-63, 65-59, 261-266).

Under the required five-step analysis used to evaluate disability, ALJ John L. Mondi found that Behling had not engaged in substantial gainful activity since his alleged onset date of September 24, 2006 (step one); his arthritis, hearing loss, hypertension, obesity, diabetes with evidence of retinopathy and neuropathy were severe impairments (step two); but that they did not qualify as a listed impairment (step three).  (R. 18-19).  The ALJ determined that Behling retained the residual functional capacity (RFC) to perform light work except no climbing ladders, ropes or scaffolds; no more than occasional balancing, kneeling, stooping, crouching, crawling, or climbing of ramps and stairs; and avoid concentrated exposure to hazards.  (R. 19-21).  Given this RFC, the ALJ concluded that Behling was able to perform his past relevant work as a system analyst and computer programmer (step four).  (R. 21).  The Appeals Council denied Behling's request for review on July 19, 2012.  (R. 1-6).  Behling now seeks judicial review of the final decision of the Commissioner, which is the ALJ's ruling.  O'Connor-Spinner v. Astrue, 627 F.3d 614, 618 (7th Cir. 2010).

## II.    Discussion

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity b y reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled within the meaning of the Act, the ALJ conducts a five-step sequential inquiry:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, see 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience.  20 C.F.R. § 404.1520(a) (2004); Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000).  "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled."  Clifford, 227 F.3d at 868 (quoting Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence, based upon a legal error, or too poorly articulated to permit meaningful review.  Hopgood ex rel. v. L.G. v. Astrue, 578 F.3d 696, 698 (7th Cir. 2009).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  In its substantial evidence review, the court critically reviews the entire administrative record but does not reweigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its own judgment for that of the Commissioner.  Clifford, 227 F.3d at 869.  An ALJ's credibility determination is generally entitled to deference and will not be overturned unless it is patently wrong.  Schaaf v. Astrue, 602

F.3d 869, 875 (7th Cir. 2010).

The ALJ denied Behling's claim at step four, finding that Behling retained the RFC to perform a range of light work.  Behling challenges the ALJ's determination to not accord controlling weight to his treating physician's opinion.  Behling also contends that the ALJ improperly assessed his RFC and credibility and improperly failed to address accommodations he required.  For the reasons explained below, the ALJ's decision is supported by substantial evidence in the record, and the Court affirms the ALJ's finding that Behling was not disabled.

### A.      Treating Physician's Opinion

Behling first contends that the ALJ erroneously rejected Dr. Davine's opinion that he was disabled after September 24, 2006.  A treating physician's opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence."  20 C.F.R. § 404.1527(c)(2).  When discounting a treating physician's opinion, an ALJ must give "good reasons."  Id.  "A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period."  Estok v. Apfel, 152 F.3d 636, 640 (7th Cri. 1998).

In this case, Dr. Davine's retrospective opinion was that since September 24, 2006, Behling was unable to work-full time.  (R. 267-68). The ALJ adequately assessed Dr. Davine's retrospective opinion.  The ALJ acknowledged that Dr. Davine had been Behling's treating physician since 2004 (R. 17), and he provided good reasons for declining to give Dr. Davine's conclusion controlling weight.  The ALJ gave two reasons for not giving controlling weight to Dr. Davine's retrospective assessment of Behling's functional limitations:  the opinion is not well supported as to claimant's ability to work as of the date last insured (December 31, 2009) and the assessment was inconsistent with other substantial evidence, including the claimant's lawn care, driving, and other activities.  (R. 20).

-4-

The first reason given by the ALJ for not affording controlling weight to Dr. Davine's opinion–the opinion is not well supported as to his ability to work before the December 2009 date last insured–is clearly a good one. In support of his February 16, 2011 conclusion that Behling was disabled prior to the December 2009 date last insured, Dr. Davine cited only that Behling's last HbA1C count was 8.1 in August 2010. (R. 268). Behling argues correctly that the form Dr. Davine completed states that his responses cover "the period of 9/24/2006 through 12/31/2009," but Dr. Davine did not cite any objective medical evidence that showed Behling was disabled during the relevant insured period before December 31, 2009. (R. 267).

The second reason for not assigning controlling weight to Dr. Davine's opinion was that it was "inconsistent with other substantial evidence, including the claimant's lawn care, driving, and other activities." (R. 20). In the decision, the ALJ noted that Behling lived independently in a home, drove, did not need help with household chores except he could not climb a ladder, and was able to cut his small lawn and rake up grass clippings. (R. 17). These examples cited by the ALJ adequately explain his reasoning, and the ALJ did not err in finding these activities were not consistent with Dr. Davine's opinion that Behling was disabled.

Behling argues that the ALJ ignored Dr. Davine's December 2009 opinion. On December 17, 2009, Dr. Davine wrote:

> Patient with multiple medical problems including diabetes, neuropathy, and severe foot deformity require use of custom shoes. I do not believe he can function in a competitive environment. I believe he is a very good candidate for social security disability. He has trouble walking distances and with prolonged standing. Doing so also puts him at risk for ulcerations and foot problems due to his diabetes and neuropathy. He also has trouble hearing, even in a quiet exam room.

(R. 245). Dr. Davine's December 2009 opinion that Behling was unable to work was unsupported by objective medical findings. Id.

Behling asserts that the ALJ ignored Dr. Davine's December 2009 opinion, but this is not entirely accurate. In his written decision, the ALJ expressly cited the December 2009 medical records and noted that Behling has "multiple medical problems, including diabetes, neuropathy, and

a severe foot deformity which required use of custom shoes such that he had trouble walking distances and with prolonged standing." (R. 20). Dr. Davine's December 2009 conclusion that Behling could not "function in a competitive environment" and was a "very good candidate for social security disability" is materially duplicative of his second conclusion in February 2011 that Behling has been unable to work full-time since September 24, 2006. Because the ALJ sufficiently addressed Dr. Davine's second opinion, his failure to specifically comment on Dr. Davine's first opinion does not necessitate a remand. (R. 20).

Dr. Davine's statements that Behling was disabled were not entitled to controlling weight because the decision of whether or not the claimant was able to work is reserved for the ALJ. 20 C.F.R. § 404.1527(d)(1) (stating "[w]e are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . . A statement by a medical source that you are 'disabled" or 'unable to work' does not mean that we will determine that you are disabled."); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001) (stating "a claimant is not entitled to disability benefits simply because her physician states that she is 'disabled' or unable to work."). Dr. Davine failed to support his conclusions that Behling was unable to work with objective medical evidence and his own treatment notes belie his conclusions.

As the ALJ noted, the record contains "minimal objective findings" and Behling underwent "minimal treatment" during the pertinent time period. Behling had four doctor visits between September 24, 2006 and December 31, 2009 for diabetes follow-up care and no significant findings were reported. (R. 221, 223, 225, 245). At his October 2006 appointment, Dr. Davine found Behling's diabetes under "good control" and recommended a follow-up visit in 6 months. (R. 225). At his next appointment in March 2007, Behling reported that he was "not eating as well." (R. 223). Dr. Davine indicated that Behling's diabetes was under "fair control." Id. Behling was to follow up in 3 to 6 months, but he did not see Dr. Davine again until August 2008. (R. 221, 223). Records from Behling's August 2008 appointment indicate that Behling had lost weight and his lab work

showed that his "numbers [were] improving" with weight loss. (R. 221, 232). Dr. Davine noted, "as you are losing weight, we can keep medications the same and repeat labs in 6 months." (R. 232). Behling's diabetes was under fair to good control in August 2008. (R. 221). Dr. Davine recommended a follow-up visit in 6 months. Id. Behling did not return to Dr. Davine for well over a year in December 2009 for medication refills and complaining of toe pain. (R. 245-46). Dr. Davine recommended a flu shot and follow-up visit in 6 months. (R. 246). The ALJ properly relied on Behling's minimal treatment and infrequent doctor's visits for his various conditions to conclude that Behling was able to perform his past relevant work.

In addition, Dr. Davine's opinions that Behling was unable to work conflicted with Dr. Davine's own detailed assessment of Behling's physical RFC, which demonstrated that Behling was capable of certain sedentary work. On the same form that Dr. Davine indicated Behling was unable to work full-time since September 2006, Dr. Davine assessed Behling's functional limitations in a work setting. (R. 267). In assessing Behling's ability to do sustained work-related activity throughout an eight-hour workday, Dr. Davine found that Behling could occasionally lift and carry 11-20 pounds; frequently lift and carry 6-10 pounds; stand and/or walk less than 2 hours of an 8 hour day; sit unlimited; frequently reach, handle, finger; occasionally push/pull with hands, climb ramps or stairs, balance, stoop, kneel, crouch, feel; and never push/pull with feet, climb ladders or ropes, or crawl. (R. 267). Dr. Davine further found that Behling should avoid exposure to temperature extremes, high humidity, and vibration, and limit exposure to moving machinery. Id. In response to the ALJ's question whether Dr. Davine's RFC findings allowed Behling's past work, the VE opined that Behling would be able to perform his past relevant work as typically performed in the national economy at a sedentary exertional level. (R. 22). Because the ALJ properly explained his reasons for rejecting Dr. Davine's disability opinions and substantial evidence supports this finding, a remand on this issue is not warranted.

**B.     Residual Functional Capacity Assessment**

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ found that Behling had the RFC to perform work at the light exertional level subject to postural limitations against climbing ladders, ropes and scaffolds; no more than occasional balancing, kneeling, stooping, crouching, crawling, or climbing of ramps and stairs; and need to avoid concentrated exposure to hazards. (R. 19). The ALJ concluded that this RFC assessment was "supported by minimal objective findings, the minimal treatment through his date last insured of December 31, 2009, and his admitted activities." (R. 21).

Behling argues that the ALJ failed to discuss his need to elevate his foot when formulating the RFC, but the ALJ did mention Behling's testimony that he elevated his foot. At the administrative hearing on April 5, 2011, Behling testified that he elevates his foot "almost all the time when [he's] sitting." (R. 44). In the decision, the ALJ noted that Behling testified that "he elevates his foot almost all the time when sitting. He also uses a foot stool in his office." (R. 18). Behling's testimony established only that he elevated his foot when sitting at the time of the hearing in April 2011. Behling did not testify that he had elevated his foot while sitting during the relevant time period of September 24, 2006 through December 31, 2009. Cartwright v. Barnhart, 205 Fed.Appx. 450, 455 (7th Cir. 2006). Moreover, Behling points to no objective evidence supporting his contention that he needed to elevate his foot. No medical evidence in the record supports such a limitation. No physician, including Behling's treating physician Dr. Davine, recommended that Behling elevate his foot. The only basis for such restriction was Behling's brief testimony. Consequently, substantial evidence supports the ALJ's decision not to include a limitation that Behling must elevate his foot when seated in the RFC finding. Id. (holding ALJ justified in concluding that the record evidence did not support a finding that claimant needed to elevate her leg where claimant "does not identify—and we were unable to find–a single instance in the record where a doctor recommended

elevating the leg let alone required it."); see also Lovelace v. Barnhart, 187 Fed.Appx. 639, 645 (7th Cir. 2006) (holding ALJ properly determined that claimant's edema was not as severe as alleged because "although [claimant] claimed that he needed to elevate his legs, nothing in the record suggests this.").

Next, Behling contends that the ALJ failed to consider his obesity in combination with his other impairments when formulating the RFC as required by Social Security Ruling 02-1p. Obesity is a condition, not a disability. Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2006). Obesity can be the cause of a disability or it can aggravate a disability caused by something else. Id. When an ALJ identifies obesity as a medically determinable impairment, SSR 02-1p requires him to "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairment we identify." SSR 01-1p, 2002 WL 34686281, at *7.

Behling's contention is not supported by the record. The record reflects that the ALJ considered Behling's obesity. The ALJ specifically found that Behling's obesity was a severe impairment at step two. (R. 18). In the decision, the ALJ explicitly noted that he considered Behling's obesity in assessing Behling's limitations at part of the RFC determination. (R. 19). Further, the ALJ cited SSR 02-1p and explained that "obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." Id. The ALJ also stated that obesity increases the risk of developing diabetes and hypertension, both of which the ALJ found as severe impairments for Behling. (R. 18, 19). Additionally, the ALJ noted that Behling testified that he was 6'1" tall and weighed 226 pounds. (R. 17, 37). The ALJ mentioned Dr. Davine's obesity diagnosis. (R. 20).

Behling does not explain how the ALJ failed to follow SSR 02-1p other than stating that the ALJ "failed to consider Behling's obesity in relation to any other impairments in violation of SSR 02-01p." (Doc. 14 at 10). The ALJ did not specifically discuss the effect of Behling's obesity on his

other impairments, but his failure to do so was harmless. The ALJ credited Dr. Davine's obesity diagnosis and reviewed Dr. Davine's medical records which make repeated references to Behling's obesity, his weight, and his BMI. (R. 20, 221, 223, 225, 245-46). Those records do not contain any specific limitations caused by obesity. Any failure on the ALJ's part to more thoroughly address Behling's obesity does not warrant a remand.

Moreover, the ALJ implicitly considered Behling's weight when he credited certain restrictions in Dr. Davine's report dated February 16, 2011, which expressly mentioned Behling's obesity. The ALJ adopted the postural limitations of never climbing ladders, ropes, or scaffolds and only occasionally balancing, kneeling, stooping, crouching, or climbing ramps and stairs suggested by Dr. Davine, who was aware of Behling's obesity. (R. 19, 267). Behling has not shown that he experienced any additional functional limitations resulting from his obesity that were not accommodated by the ALJ. Behling has also not cited to any statement by his treating physician suggesting that his obesity exacerbated his reported impairments. Thus, Behling has not met his burden of explaining how his obesity exacerbated his underlying impairments and further limited his functioning. Prochaska v. Barnhart, 454 F.3d 731, 736-37 (7th Cir. 2006); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). Furthermore, the VE testified that Behling would still be able to perform his past relevant work as typically performed in the national economy at a sedentary exertional level even if he was limited to the RFC suggested by Dr. Davine who diagnosed Behling's obesity. (R. 48, 267). The ALJ adequately considered Behling's obesity, and substantial evidence supports his conclusion that it did not preclude Behling from performing certain light work, including his past relevant work as generally performed in the economy.

Behling also faults the ALJ failing "to consider all the evidence" which "supported allowance of the claim." (Doc. 14 at 13). Social Security Ruling 96-8p requires an RFC assessment to be "based on *all* of the relevant evidence in the case record," including medical source statements. 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(1). Although an ALJ must build an accurate and logical bridge from the evidence to his conclusions, the ALJ need not provide "a

complete written evaluation of every piece of testimony and evidence." <u>Haynes v. Barnhart</u>, 416 F.3d 621, 626 (7th Cir. 2005). Rather, the ALJ need only "minimally articulate" his reasoning so as to connect the evidence to his conclusions. <u>Rice v. Barnhart</u>, 384 F.3d 363, 371 (7th Cir. 2004). An ALJ may not ignore a line of evidence contrary to his ruling. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 917 (7th Cir. 2003).

Behling contends that the ALJ disregarded evidence that pre-dated his alleged onset date of September 24, 2006.[2] Most of the allegedly ignored records were provided by Dr. Eric K. Bartel of the Fox Valley Orthopaedic Institute concerning Behling's Charcot foot. (R. 272-406). Dr. Bartel treated Behling between May 26, 2000 and August 20, 2001 "for his Charcot arthropathy with resultant foot deformity secondary to severe insulin dependent diabetes and peripheral neuropathy." (R. 363). Although the ALJ may not have specifically cited all of Dr. Bartel's notes, the ALJ did consider Behling's own testimony regarding his Charcot foot. The ALJ noted that Behling "alleges being prevented from working by a right 'Charcot foot' and diabetes . . . . His foot problem started in 2000 and was helped by pins inserted in 2002, which healed a hole in the foot. He wears custom shoes." (R. 17). Behling does not explain how any of the medical records from Dr. Bartel support greater functional limitations than those found by the ALJ. The ALJ's discussion of Behling's Charcot foot deformity is sufficient and satisfies the minimal articulation standard. Behling cites additional records from Dr. Davine which the ALJ failed to mention, but most of these records post-date Behling's date last insured of December 31, 2009 and Behling does not explain how these records support his assertion that he was disabled prior to then. (R. 409-18, 422-33). Behling next argues that the ALJ, in assessing his RFC, erred in finding "minimal objective findings" given that the ALJ recognized "that at least as of Dec. 17, 2009, before the date last insured, Behling had hypertension, hearing loss, diabetes, neuropathy, retinopathy, obesity, 'and a severe foot deformity

---

[2] Behling again argues that the ALJ ignored Dr. Davine's December 2009 opinion that Behling is disabled. As explained above, the ALJ did not ignore Dr. Davine's opinion, but rather specifically discussed Dr. Davine's December 2009 notes and declined to give his opinion that Behling was unable to work full-time controlling weight. (R. 20).

which required use of custom shoes such that he had trouble walking distances and with prolonged standing.'" (Doc. 14 at 12). Behling's argument is not persuasive. The mere diagnosis of a condition does not establish disability. Allen v. Astrue, 2011 WL 3325841, at *12 (N.D. Ill. Aug. 1, 2011) (stating "[a] mere diagnosis does not establish functional limitations, severe impairments, or an inability to work."). Rather, Behling must show how his conditions created functional limitations during the relevant period beyond those the ALJ incorporated in the RFC. As to Behling's foot deformity, that condition was treated by Dr. Bartel long before the alleged onset date of September 24, 2006 and Behling worked for several years with his foot deformity.[3] At Behling's last appointment with Dr. Bartel on August 20, 2001, Behling reported that his right foot "is doing fine and is healed up. He is back in his regular shoes. He has gotten adjusted. He is having no problems. There are no fevers or chills." (R. 273). Dr. Bartel wrote that he would see Behling on a "prn" (as needed) basis, and there is no evidence that Behling returned to Dr. Bartel.

## C.    Credibility

Behling challenges the ALJ's use of "meaningless boilerplate" when he concluded that Behling's "statements concerning the intensity, persistence and limiting effects of these symptoms are credible as to his condition as of his date last insured only to the extent they are consistent with the above residual functional capacity assessment." (R. 19). The Seventh Circuit has criticized this template as unhelpful and as implying "that the ability to work is determined first and is then used to determine the claimant's credibility." Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012); see also Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010). However, the ALJ provided specific reasons for finding Behling only partially credible. Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) (stating "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless."); Richison v. Astrue, 462 Fed. Appx. 622, 625 (7th Cir. 2012) (holding the boilerplate language is "inadequate, by itself, to support a credibility finding," but affirming

---

[3] Behling worked in his last position from 1984 to 2004. (R. 31, 166, 175).

decision where "the ALJ said more."). First, the ALJ noted that Behling's claim of disabling limitations was inconsistent with the minimal objective findings. (20, 21). The ALJ discussed Dr. Davine's treatment records. (R. 20). The ALJ cited to Behling's statement at his October 2006 follow-up visit for his diabetes that the was doing "pretty good" and no significant findings were reported by Dr. Davine. (R. 20, 225). The ALJ also pointed to Behling's March 2007 visit which did not document significant objective findings or limitations and recommended a follow-up visit in 3 to 6 months, but Behling did not follow up for over a year. (R. 20, 221, 223). The ALJ discussed Behling's next visit in August 2008 which did not reveal significant abnormalities or limitations attributable to diabetic neuropathy or retinopathy. (R. 20, 221). The ALJ noted that Behling next saw Dr. Davine in December 2009 just before his insured status expired for medicine refills and complaining of foot problems for which he was prescribed medication. (R. 20, 244-46).

Second, the ALJ accurately noted the minimal treatment Behling received between the alleged onset date of September 24, 2006 and the date last insured of December 31, 2009. (R. 20, 21). The medical records document only four visits with his treating physician during the relevant time period. Finally, the ALJ considered Behling's testimony regarding his daily activities, noting that Behling "lives alone in a house. He drives and doesn't need help with chores except that he can't get up on a ladder. He is able to cut his lawn, which is not terribly large. . . . He does the front one week and the back the next week. . . . He rakes up the grass clippings." (R. 17). The ALJ gave sufficiently specific reasons for rejecting Behling's allegations of disabling limitations.[4]

As an additional challenge to the ALJ's credibility finding, Behling argues that the ALJ erred in failing to address his testimony that his medications caused diarrhea. In evaluating a claimant's credibility, the ALJ must consider, among other things, the side effects of any medication on the

---

[4] The ALJ also gave Behling's "use of medication" as a reason for discounting his testimony but did not explain how Behling's "use of medication" was inconsistent with his allegation of disability. (R. 20). Because the other explanations given by the ALJ support his credibility finding, this unexplained reason does not require a remand. Halsell v. Astrue, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009) (stating "[n]ot all of the ALJ's reasons must be valid as long as *enough* of them are.") (emphasis in original).

ability to work. SSR 96-7p.  "But an ALJ is not required to provide a complete written evaluation of each piece of evidence, including the side effects of medication." Labonee v. Astrue, 341 Fed.Appx. 220, 226 (7th Cir. 2009).  The ALJ noted Behling's testimony that his medications cause diarrhea. (R. 17).  Aside from Behling's testimony that one or two of his medications "have a tendency to give you diarrhea," the record contains no evidence documenting Behling's diarrhea, its severity, its impact on his ability to work, or any physician limitations in this regard. Labonee, 341 Fed.Appx. at 226 (stating other than claimant's testimony "that his medications caused dizziness and drowsiness, the record contains virtually no evidence that she complained of her medications causing significant side effects."); (R. 38).  As a result, a remand on this issue is not warranted.

### D.  Step 4 Determination

Finally, Behling challenges the AL's Step 4 determination that he could perform his past relevant work as a system analyst and computer programmer at least as generally performed in the economy.  (R. 21).  A claimant is not disabled at step four if he can perform his past relevant work "either as [he] actually performed it or as generally performed in the national economy.  20 C.F.R. § 404.1560(b)(2) (emphasis added).  Behling bears the burden of demonstrating that he cannot perform his past relevant work. Clifford, 227 F.3d at 868.

Behling argues that the ALJ failed to consider whether Behling's former employer's accommodations precluded performance of his past relevant work.  Behling testified that during the time he was temporarily in a walking cast at his prior job, he was given an accommodation in that other people did the lifting for him and picked up and distributed reports for him.  (R. 42-43).  The ALJ did not mention this accommodation but Behling has failed to explain why this omission is significant.  The vocational expert (VE) testified that Behling's past relevant work was performed at a light to medium exertional level.  (R. 47).  The VE further testified that Behling's past jobs as a system analyst and computer programmer are generally performed at the sedentary exertional level in the national economy. Id.  The ALJ determined, based on the testimony of the VE, that Behling

was capable of performing his past relevant work as it is generally performed in the national economy at the sedentary level. (R. 21, 47-48). Having found that Behling can perform his past job as generally performed in the economy, the ALJ did not need to address the temporary exertional accommodations Behling was given by his last employer.

Behling also argues that the ALJ failed to consider whether Behling's hearing loss required a telephone headset accommodation and precluded performance of his past relevant work. The Court is not persuaded that the ALJ erred in this regard. When asked by the ALJ whether a hypothetical individual with the prior listed functional limitations as well as no hearing in the right ear and a 60 percent hearing loss in the left ear could perform the past relevant work as typically performed in the national economy, the VE testified that a hypothetical individual would "probably have to have some accommodation made in order to perform his past relevant work, specifically in regard to headsets when talking on the telephone. But otherwise, yes, he would be able to." (R. 48). The ALJ did not disregard this testimony by the VE. In his decision, the ALJ found Behling's hearing loss severe at step 2 and noted: "[t]he vocational expert further testified that the person could still do this work even if limited to sedentary work or hearing impaired, consistent with the claimant's testimony, provided the individual could use a headset." (R. 18). Telephone headsets are readily available, and there is no reason to believe that the VE's testimony was not based on her experience that the jobs of system analyst and computer programmer generally allow telephone headsets. Jones v. Apfel, 174 F.3d 692, 693 (5th Cir. 1999) (holding ALJ properly relied on vocational expert's testimony where "allowing for an employee to alter between sitting and standing is a prevalent accommodation in the work place."); Pena v. Apfel, 1999 WL 155699, at *2 (N.D. Cal. Mar. 15, 1999) (upholding ALJ's decision "based on the VE's testimony that allowing for altering sitting and standing is "a commonplace accommodation in the workplace."). Moreover, although the record demonstrates that Behling suffers hearing loss, there is no evidence that Behling required a telephone headset. Behling never testified that he used a telephone headset, and there is no

evidence any physician treating Behling had recommended he use a telephone headset.

**III.     Conclusion**

For these reasons, Plaintiff's Motion for Summary Judgment [13] is denied.   Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is affirmed.   The Clerk is directed to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Kenneth Behling.

E N T E R:

**Daniel G. Martin**
**United States Magistrate Judge**

**Dated:  July 23, 2013**